DECISION
This matter came on to be heard on various dates in 1997 and 1998 on the plaintiffs' motion to adjudge the defendants in contempt of the judgment entered in this case on January 3, 1997.
 THE TAILINGS STOCKPILE
The evidence produced at the hearings does not satisfy the Court that the defendants had created a tailings stockpile on their premises in the meaning of that term as it was embodied in the judgment entered on January 3, 1997.
The defendants did accumulate some construction and demolition debris on their premises other than in the storage cells, but there is no satisfactory evidence that those accumulations continued for longer than twenty-four hours. There is no evidence that the defendants have continued any conduct which led departmental inspectors to believe the defendants were improperly stockpiling debris, after it had been detected and was remedied.
 THE CELL COVERING
For a substantial period of time the defendants did not comply with the provisions of paragraphs 3 and 4 of the judgment, which prohibited the use of wood chips or other organic material as cover for the cells and which required a topping of not less than twelve (12) inches of fresh virgin non-organic soil or clay on all cell surfaces not being actively filled or excavated.
The defendants ask the Court to modify the judgment to permit them to use a product which contains a small percentage of organic material. The defendants have asserted, without contradiction, that the material they propose for cover has been approved by the plaintiffs as a cover at the central landfill.
The evidence is not clear that the cell which is now not currently being filled or mined does not have the required cover.
 THE DAILY COVER
The defendants are not in compliance with paragraph 5 of the judgment with respect to the cover of the "active" cells during periods they are not being worked. The nature and extent of that cover was and is to be determined by the Division of Waste Management of the department, subject to approval by the Court. The record does not show that the department ever determined an appropriate cover for the working cells and submitted such a determination for approval by this Court.
The record is still not clear as to what the plaintiffs require the defendants to use as daily cover on the working cells. Nothing has been submitted to the Court for approval. Obviously, the Court considered that a different cover would be applied to the cells being worked daily from that which would cover a cell for over one year during decomposition of its contents. Until the plaintiffs submit an appropriate daily cover for the active cells, the defendants will not be in contempt of this provision.
 THE BERM WALLS
The defendants have utterly failed to comply with the requirements of paragraph 8 of the judgment, which required them to bring the berm walls of the cells into compliance with the Consent Decree of May 16, 1994. Although no copy of the Consent Decree was introduced in this proceeding and the Court's decision of November 6, 1996 refers to a consent judgment of October 6, 1990, the parties do not dispute that the berms were to conform generally to a set of drawings which are in evidence in this case.
Those drawings are not, however, engineering plans. They are meant to be illustrations of typical configurations. The outside slopes of the berms are fixed at a one-foot rise for each two feet of horizontal base. They also describe a typical elevation of forty feet from the typical base of the berm to the top of the berm.
The evidence was convincing that several reaches of the berm had exterior slopes substantially steeper than was shown in the drawing. The evidence is clear that in many places the berm reaches to heights substantially more than forty feet from the base of the berm. The evidence also shows that the defendants have been reconfiguring the berms to bring them into conformance with the maximum slope requirement. No effort has been made to reduce the height of the berms to approximate the typical height of fort, v feet. The drawing also shows that the exterior slopes of the berms will be covered with vegetation. The defendants have attempted to cover some, but not all, of the exterior slopes with a grassy cover by hydroseeding. These efforts have not been completely successful.
The nonconforming slopes and lack of vegetative cover appears to be most severe on the exterior of the berm which runs parallel to Green Hill Road. The berms running along Shun Pike appear to have been brought into substantial conformance with regard to slope and vegetation. The plaintiffs seem to believe that the berms were not to be made from recycled material produced by the defendants. Nothing in the judgment of January 3, 1997 or the consent judgment contains any such requirement as to the berms themselves.
The Court finds that the defendants have not proceeded diligently, let along "forthwith," as required by the judgment, to bring the berms into conformance with the judgment and the Consent Decree. The defendants have been guilty of needless foot-dragging.
 ACCESS BY THE PLAINTIFFS
The access of representatives of the plaintiff director to the defendants' premises has become the source of continuing controversy in this case. The Court is satisfied from all the evidence that there has been some obtrusive conduct by the defendants. The Court is also satisfied that some of the plaintiffs' representatives have, on occasion, exhibited provocative behavior. The Court will not tolerate any
interference in any way with the department's inspectors, irrespective of their conduct. The defendants' motion to modify the judgment of January 3, 1997 with regard to access is denied.
 GENERAL CONSIDERATIONS
The Court now recognizes that its use of the expression "all deliberate speed" during colloquy on May 9, 1997 was unfortunate. The plaintiffs heard only "speed." The defendants heard only "deliberate." Progress in any event has been neither deliberate nor speedy.
The Court is engaged in a learning process regarding the berm walls. Apparently, the defendants raise the berm walls as they fill each cell. As a consequence, some of the berms have been raised to heights of over seventy feet from their bases in some locations. The defendants seem to think the sky's the limit. They are mistaken. The requirement of a vegetative cover on the exterior of the berms along the public highways, as well as the typical height of the berm walls, indicate clearly that there is to be a maximum height for these walls. Otherwise, it will be impossible to maintain the vegetative cover if the berm walls are regularly raised and lowered as the cells are filled and excavated. The use of a specific number as a typical height will have no meaning left at all.
 CONCLUSIONS
1. Based on the foregoing findings of fact, the defendants are adjudged to be in civil contempt of the judgment of January 3, 1997 in the following respects:
a. The height of some of the berm walls in some places unreasonably exceed the typical height of forty feet.
b. Some exterior slopes of the berm walls still exceed the two-to-one slope ratio.
2. The defendants shall remedy the height and shape of the cell walls prior to January 31, 1999 and shall file satisfactory evidence of such remedy with the Court prior to February 8, 1999.
3. Otherwise, the plaintiffs' motion to adjudge the defendants in contempt will be denied.
4. The defendants motion to modify the judgment entered on January 3, 1997 with regard to cover will not be considered until the Court is satisfied that the defendants are not in contempt.
The plaintiffs will present a form of order for entry on reasonable notice to the defendants.